FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 06, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ZACHARY LEE BARRETT,<br><br>                Plaintiff,<br><br>v.<br><br>SHERRY JOHNSON, ARNP; and LISA RAPP, ARNP,<br><br>                Defendants. | NO. 1:23-CV-3028-TOR<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Defendants' Motion for Summary Judgment (ECF No. 23) and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 29). The matters were submitted for consideration without oral argument. The Court has reviewed the record and files herein and is fully informed. For the reasons discussed below, Defendant's motion (ECF No. 23) is **GRANTED** and Plaintiff's motion (ECF No. 29) is **DENIED**.

## BACKGROUND

These motions for summary judgment arise out of the medical treatment

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 1

1  Plaintiff received while incarcerated at the Yakima County Department of
2  Corrections (YCDOC). The parties agree on much of the background animating
3  Plaintiff's claims; however, the Court notes where underlying facts are disputed.
4        Plaintiff was booked into YCDOC on October 28, 2022. ECF Nos. 24 at 2,
5  ¶ 4; 30 at 2, ¶ 1. In his initial medical screening upon booking, Plaintiff indicated
6  that he had received a thyroidectomy due to cancer and that he suffered from
7  elevated parathyroid levels. ECF Nos. 24 at 2, ¶ 6; 30 at 2, ¶ 1. On October 29,
8  2022, advanced registered nurse practitioner (ARNP) Lisa Rapp put in a provider
9  order for thyroid control medications which Plaintiff was required to take on a
10 daily basis. ECF Nos. 24 at 3, ¶ 10; 25-4 at 2-3. On November 3, 2022, medical
11 staff conducted a medication management review and determined that Plaintiff
12 should take different medications to manage his symptoms. ECF Nos. 24 at 3-4, ¶
13 11; 25-5 at 2. However, staff needed to meet with Plaintiff and obtain his consent
14 in order to begin this new treatment regimen. ECF No. 24 at 3-4, ¶ 11. On
15 November 8, when the clinician and Plaintiff were scheduled to meet, Plaintiff
16 declined to attend the appointment, allegedly because he did not want to receive
17 mental health care. ECF Nos. 24 at 4, ¶ 13; 25-7 at 2.
18       Three days later, on or about November 11, Plaintiff sent a kite stating that
19 he was suffering symptoms of hyperparathyroidism, including pain and muscle
20 fatigue. ECF No. 30 at 2, ¶ 2; 32-1 at 8. On November 16 or 17, Plaintiff met with

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 2

a nurse about his pain, and his medication regimen was updated at that time. ECF No. 24 at 4, ¶ 14. When Plaintiff told the nurse that he was experiencing pain and muscle fatigue, she reportedly told him to exercise more and to discuss it with the clinician. ECF No. 30 at 2, ¶ 3.

On November 20, Plaintiff attempted to divert his treatment during YCDOC's Medication Pass session by dumping all of his medications on the floor and walking off. ECF Nos. 24 at 5, ¶ 15; 25-8 at 2. Because this diversion risked potential misuse by other inmates, YCDOC mental health staff temporarily discontinued four of Plaintiff's five prescribed medications. ECF No. 25-9 at 2. Plaintiff was still required to take one of his thyroid medications daily, and staff flagged that it would "restart [the other four medications] if clinical symptoms warrant[ed]" doing so. *Id.* at 2-4; *see also* ECF No. 24 at 5, ¶ 16. Plaintiff maintains that he was only diverting his mental health medication, not his thyroid tablets. ECF No. 31 at 2.

On December 1, 2022, Plaintiff met with ARNP Sherry Johnson to discuss his thyroid symptoms, pain, and mobility issues. ECF Nos. 24 at 5, ¶ 17; 31 at 2. Plaintiff told ARNP Johnson that his pain was approximately a "6" on a scale of 1-10. ECF No. 30 at 2, ¶ 4. Plaintiff further alleges that his request for pain medication was denied at this meeting. *Id.* At the meeting, ARNP Johnson prescribed Plaintiff a Vitamin D3 tablet, to be taken daily. ECF No. 24 at 5, ¶ 18.

ARNP Johnson also ordered that labs be completed for Plaintiff to check his thyroid, parathyroid, and Vitamin D levels. ECF Nos. 24 at 5, ¶ 18; 25-10 at 4.

On December 16, Plaintiff submitted the following medical request: "I am still having muscle and joint pain very bad, and it gets progressively worse as the days pass. Can we discuss this matter please[?]" ECF No. 32-1 at 2 (cleaned up). Three days later, on December 19, YCDOC staff replied that Plaintiff would be scheduled to be seen. *Id.*

On January 11, 2023, Plaintiff again complained that he was "still experiencing pain and muscle fatigue . . . due to hyperparathyroidism" and that he had "not been seen in quite a while." ECF No. 32-1 at 3 (cleaned up). He asked to be seen soon. *Id.* YCDOC assured him that an appointment would be scheduled. *Id.* On January 21, 2023, Plaintiff again followed up, asking "I have been waiting 8 days, when will I be seen?" *Id.* YCDOC responded, "We cannot give you dates and times of appointments due to security reasons." *Id.*

On January 31, Plaintiff entered the following kite:

> I mentioned the symptoms I was still experiencing [to ARNP Johnson], and again mentioned a possibility of having a nodule or mass in my parathyroid . . . I have had no follow-ups to date, nor were the lab results discussed or shown to me. To date I am still having symptoms, and the symptoms have progressively gotten worse. And to note recently I have noticed a small lump in the region of my surgical scar. I am afraid that this is a nodule . . . [W]hat is an inmate, such as [myself], supposed to do in order to be heard when I voice valid medical complaints to medical staff [whom] I am supposedly in the care of?

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 4

ECF No. 32-1 at 4 (cleaned up).

Plaintiff was seen by ARNP Rapp same day as this grievance was filed. ECF Nos. 24 at 5, 32-1 at 6. ARNP Rapp noted Plaintiff's complaints of pain and fatigue and added,

> Regarding his fatigue, muscle, and joint aches, that is due to him not taking his thyroid medication as prescribed. [Plaintiff] has been missing doses of his thyroid medication. He shrugs his shoulders and states that he doesn't get up for it sometimes because it takes him a long time to fall asleep and it's hard to get up that early . . . [I] reminded [him] that the most important thing he can do to take care of his health is to take his thyroid medication daily. He needs to continue to take his vitamin D supplement daily as well.

ECF No. 32-1 at 7. Another lab draw was also performed to check Plaintiff's thyroid panel and vitamin D levels. ECF No. 25-13 at 3.

Throughout February, Plaintiff filed several complaints regarding his treatment. ECF No. 32-1 at 8-11. On February 6, Plaintiff grieved that he had not yet seen a specialist for his symptoms and suspected nodule, and that his care thus far had been insufficient. ECF No. 32-1 at 8. YCDOC staff responded that he was scheduled to see an endocrinologist and that YCDOC had "no control over [the specialists'] schedules." *Id.* YCDOC also emphasized that Plaintiff's symptoms were due to his failure to take his prescribed thyroid medication. *Id.*

On February 9, Plaintiff visited otolaryngology specialist and endocrinologist Michael Hubbell, M.D., at the MultiCare Rockwood ENT Center.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 5

ECF Nos. 24 at 6, ¶ 20; 25-14 at 2.  Dr. Hubbell reported that Plaintiff was not taking his medication every morning because he "sometimes misse[d] the morning call for meds." ECF No. 25-14 at 3.  YCDOC records show 30 instances of Plaintiff failing to take his medication between his initial booking in October 2022 through the end of February 2023.  ECF No. 24 at 7, ¶¶ 21-25.

On February 15, 2023, Plaintiff met with ARNP Rapp to review his lab results.  ECF No. 24 at 8, ¶ 26.  ARNP Rapp told Plaintiff that the nodule was harmless and that his thyroid cancer had not returned, but that his fatigue and joint pain were likely due to his low vitamin D levels and encouraged him to continue taking his thyroid medications daily.  ECF No. 25-20 at 3.

On February 21, Plaintiff filed a grievance following another meeting with ARNP Rapp.  ECF No. 32-1 at 9.  Plaintiff alleged that he believed ARNP Rapp had been made aware of a previous complaint filed against her by Plaintiff and that ARNP Rapp had retaliated against him as a result by claiming that he potentially had COVID and needed to be isolated.  *Id.*  Plaintiff also stated that ARNP Rapp had never offered to prescribe pain medication before a meeting between them on February 21, and that his previous requests for pain medication had been denied.  *Id.*  Plaintiff also noted that he continued to feel pain and fatigue despite his lab results being normal.  *Id.* at 10.

On February 25, Plaintiff appealed his claim to internal affairs. ECF No. 32-1 at 11. Plaintiff wrote that his pain was now resolved but that he remained frustrated that his earlier complaints were not addressed sooner. *Id.* Plaintiff filed this lawsuit on March 3, 2023. *See* ECF No. 1.

## DISCUSSION

By amended complaint, Plaintiff contends that his right to adequate medical care under the due process clause of the Fourteenth Amendment was violated. ECF No. 9 at 4-11. Plaintiff seeks adequate medical care treating his symptoms and the sum of $150,000 for Defendants' deliberate indifference to his pain. *Id.* at 11.

**I.    Summary Judgment Standard**

The Court begins by reviewing the familiar standard for summary judgment. Summary judgment may be granted in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts

showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

On cross-motions for summary judgment "both parties asserting that there are no uncontested issues of material fact[ ] does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *Fair Housing Council of Riverside Cnty, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)). Moreover, the court must consider each motion on its own merits. *Id.* at 1134 ("[W]hen simultaneous cross-motions for summary judgment

on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them."). However, where motions for summary judgment center around the same dispositive issue, a court need not organize its discussion of the cross-motions into separate sections. *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015); *see also, e.g.*, *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 890 (9th Cir. 2019) (determining that where two motions for summary judgment center around the same central legal issue and one party has the same burden of proof under substantive law in both motions, granting one party's motion compels denial of the other party's motion). With these principles in mind, the Court turns to the motions for summary judgment.

**II.    Applicability of RCW 7.70.030**

At the outset, Defendants contest that Plaintiff's action should have been brought under RCW 7.70.030 because that statute provides the exclusive remedy for injuries arising out of health care. Defendants are mistaken as to the applicability and scope of RCW 7.70.030.

Chapter 7.70 of the Washington code governs "all civil actions and causes of action, whether based on tort, contract, or otherwise, for damages for injury occurring as a result of health care which is provided after June 25, 1976." RCW

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 9

7.70.010.  Per RCW 7.70.030, no award shall be made for damages for an injury occurring as the result of health care unless the plaintiff establishes that: (1) the injury resulted from the failure of a health care provider to follow the accepted standard of care; (2) the provider promised the patient that the injury suffered would not occur; or (3) the provider did not obtain the consent of the patient for the procedure resulting in the injury.  In this case, Defendants insist that only RCW 7.70.030(1) is exclusively applicable and that Plaintiff has not shown that his injury resulted from their failure to follow the accepted standard of care.  *See* ECF Nos. 23 at 7-10; 35 at 5-8; *see also* ECF No. 36 at 12 (arguing that Plaintiff's Fourteenth Amendment due process claim is "not recognized under Chapter 7.70" and must therefore be dismissed).

      To be sure, the scope of RCW 7.70.030 is intended to sweep broadly.  When confronted with multiple state law claims, the state courts have often held that Chapter 7.70 provides the exclusive procedure and remedy.  *See Wright v. Jeckle*, 104 Wash. App. 478, 481 (2001) ("Chapter 7.70 RCW governs any action for damages based on an injury resulting from health care—exclusively."); *see also, e.g. Bae v. Arlington Spine Ctr.*, No. 76928-6-I, 2018 WL 5250206, at *5 (Wash. Ct. App. Oct. 22, 2018) (dismissing plaintiff's premises liability claim against provider on the grounds that it was barred by Chapter 7.70); *see also, e.g.*, *Young v. Savidge*, 155 Wash. App. 806, 819-20 (2010) (claim for breach of contract not

recognized because it arose out of health care and therefore fell under Chapter 7.70).

Nevertheless, it is a matter of first principles that the Constitution is "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. *See also F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[B]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."). In other words, RCW 7.70.030 does not limit a plaintiff's ability to bring a cause of action under the Due Process Clause of the Fourteenth Amendment, regardless of whether such claims may be said to arise from the provision of health care or not. The United States District Court for the Western District of Washington has appropriately adjudicated claims brought under RCW 7.70.030 *and* claims contemporaneously brought under the federal constitution on several occasions. *See, e.g.*, *Rasmussen v. Skagit Cnty.*, 448 F. Supp. 2d 1203, 1209-13 (W.D. Wash. 2006) (contemplating claims for violations of the Eighth Amendment under 42 U.S.C. § 1983 and RCW 7.70.030); *Stevens v. Pierce Cnty.*, C22-5862-BHS, 2023 WL 5177915, at *6-8 (W.D. Wash. Aug. 11, 2023) (analyzing both deliberate indifference and RCW 7.70.030 claims). Thus, actions under RCW 7.70.030 and the federal constitution are not mutually exclusive.

Here, Plaintiff alleges that Defendants violated the Due Process Clause of the Fourteenth Amendment. The Court declines to convert Plaintiff's claim invoking federal jurisdiction into a cause of action under the RCW. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (under the well-pleaded complaint rule, "the plaintiff [is] the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law"). Accordingly, the Court does not consider further Defendants' arguments under RCW 7.70.030.

### III. Fourteenth Amendment Claim

Plaintiff alleges that Defendants violated the Due Process Clause of the Fourteenth Amendment.[1] The Court grants summary judgment to Defendants on this issue.

---

[1] Plaintiff and Defendants each mention the Eighth Amendment. ECF Nos. 29 at 3; 36 at 9. However, Plaintiff stated in his amended complaint that he is a pretrial detainee. ECF No. 9 at 2. Therefore, the Court instead relies upon the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.17 (1979) ("Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment.").

1   Defendants correctly argue that the Fourteenth Amendment does not confer
2   a private right of action.  Although this is true, Defendants cannot prevail on this
3   basis alone.  *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (holding that
4   the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint
5   for imperfect statement of the legal theory supporting the claim asserted" and
6   summarily reversing the district court's dismissal of a civil rights claim premised
7   on Fourteenth Amendment violations for failure to explicitly invoke Section 1983).
8   Plaintiff is a prisoner proceeding *pro se* and his pleadings must be considered with
9   lenity.  *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016).  The Court will
10  therefore treat the claim as though it was properly brought under Section 1983.

11  42 U.S.C. § 1983 empowers plaintiffs to sue persons who, "acting under
12  color of state law, caused the deprivation of a federal right."  *Kentucky v. Graham*,
13  473 U.S. 159, 166 (1985).  The rights guaranteed by Section 1983 are "liberally
14  and beneficially construed."  *Dennis v. Higgins*, 498 U.S. 439, 443 (1991) (quoting
15  *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 684 (1978)).  "A person
16  deprives another 'of a constitutional right, within the meaning of section 1983, if
17  he does an affirmative act, participates in another's affirmative acts, or omits to
18  perform an act which he is legally required to do that causes the deprivation of
19  which the plaintiff complains.'"  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.
20

1988) (brackets and emphasis omitted) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

Defendants argue that Plaintiff cannot establish that ARNPs Rapp and Johnson were acting under the color of state law at the time Plaintiff sought treatment. Defendants are employed by Wellpath, which contracts with YCDOC to provide medical services. ECF Nos. 23 at 13; 35 at 1. The Court assumes without deciding that Defendants were state actors. *See West v. Atkins*, 487 U.S. 42, 49 (1988) (concluding that a private physician under contract to provide medical care to prison inmates was a state actor under § 1983). Even so, Plaintiff has not raised a genuine issue of material fact as to whether Defendants provided constitutionally deficient medical care.

The same standards apply to a pretrial detainee's claim of deliberate indifference as do to a convicted person's claim under the Eighth Amendment. *Lolli v. Cnty. of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). To prevail on a motion for summary judgment alleging failure to provide care for a serious medical need, a plaintiff "must show that he was (1) confined under conditions posing a risk of objectively, sufficiently serious harm and (2) that the officials had a sufficiently culpable state of mind in denying the proper medical care." *Id.* at 419 (internal quotations and citations omitted). To show a serious medical need under the first prong, a plaintiff must demonstrate that failure to treat his condition

1  "could result in further significant injury or the 'unnecessary and wanton infliction

2  of pain.'" *Jett v. Penner*, 439 U.S. 1091, 1096 (9th Cir. 2006) (internal quotations

3  and citations omitted).  As to the second prong, a defendant is only liable for

4  denying necessary medical care if "he knows of and disregards an excessive risk to

5  inmate health and safety." *Lolli*, 351 F.3d at 419.  Merely inadvertent or negligent

6  failure to provide medical care will not rise to the level of a constitutional

7  violation.  *Jett*, 439 F.3d at 1096.

8      The Court does not doubt the severity of Plaintiff's thyroid condition or his

9  symptoms.  However, it cannot be said that Defendants or other YCDOC officials

10 denied Plaintiff proper medical care on any occasion.  Throughout the 81-day

11 period Plaintiff references in his amended complaint, ECF No. 29 at 2, Defendants

12 met with Plaintiff multiple times to discuss his symptoms and develop a treatment

13 regimen.  To the extent there was any delay between YCDOC's receipt of

14 Plaintiff's kites and his scheduled appointments with Defendants, Plaintiff has not

15 alleged facts which fairly show that Defendants had the authority to determine

16 when they met with him or that they were otherwise trying to evade him or delay

17 treatment.  On the whole, YCDOC and Defendants were responsive to Plaintiff's

18 kites and made active efforts to address his medical concerns by scheduling

19 appointments, providing him medication, and transporting him to off-site specialist

20 meetings when necessary.   Thus, Plaintiff has not shown that Defendant

unnecessarily inflicted Plaintiff pain during the gaps between his appointments, nor has he shown that these gaps in meetings resulted in further significant injury.

As to Plaintiff's pain, Defendants and Dr. Hubbell each warned Plaintiff that he would likely experience a resurgence of symptoms if he failed to regularly take his prescription medication. Plaintiff was offered his medication on a daily basis. Nevertheless, Plaintiff was obstinate in his refusal of his medication. Although Plaintiff alleges that he missed several Medication Pass calls due to his pain and limited mobility, there is objective evidence in the record that Plaintiff failed to take his medication on several occasions because he was trying to avoid other, mental health medication and because he struggled to wake up on time. Therefore, Plaintiff has not shown above mere speculation that his pain was fairly attributable to the challenged actions of Defendants.

Finally, Plaintiff seems to argue that Defendants should have offered him pain medication sooner and that ARNP Johnson misled him about his ability to receive pain medication in his initial meeting with her. ECF No. 30 at 2, ¶ 4. But even assuming that Plaintiff indeed requested pain medication from Defendants, it is not clear that their actions were indicative of an intent to deprive Plaintiff of proper medical care or that they believed the failure to provide pain medication would create an excessive risk to Plaintiff's health and safety. As each medical professional noted, Plaintiff had the option to alleviate his symptoms by taking his

thyroid/Vitamin D medication as prescribed.  Thus, Defendants' actions do not suggest deliberate indifference to a serious medical need.  *See, e.g.*, *Reece v. Basi*, 704 F. App'x 685, 686 (9th Cir. 2017) (concluding that plaintiff failed to raise a genuine issue of material fact as to whether defendant consciously disregarded a risk to plaintiff's health by using prescription medication to treat his medical problem).

In sum, Plaintiff has not stated a due process violation.  Because further amendment would be futile based on the factual record presented, the Court does not grant Plaintiff leave to amend.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment (ECF No. 23) is **GRANTED**. Plaintiff's Cross-Motion for Summary Judgment (ECF No. 29) is **DENIED**.

2. The Amended Complaint, ECF No. 9, is hereby **DISMISSED WITH PREJUDICE**.

3. The deadlines, pretrial conference and trial are **VACATED**.

The District Court Executive is directed to enter this Order and Judgment for Defendants, furnish copies to the parties, and **CLOSE** the file.

DATED May 6, 2024.



THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS FOR SUMMARY JUDGMENT ~ 17